## J. W. Hollman *v.* M. M. Bennett et al.

1. PROBATE COURT—JURISDICTION.—The probate court has no authority to decree the sale of the lands of a decedent for the purpose of paying the commissions allowed to an administrator for his care and trouble as such.

2. COMMON LAW—STATUTE—CONSTRUCTION.—The common law of England brought over by the colonists, so far as applicable to the new circumstances and condition of the people and the country, and so far as not changed by the statute, is the law of this state; and the courts will construe strictly all statutes passed in modification or derogation thereof, assuming that the legislature have, in the terms used, expressed all the change it intended to make in the old law, and will not, by construction or intendment, enlarge its operation.

3. REAL ESTATE—DESCENT—JURISDICTION.—On the death of the ancestor the title to his real estate vests immmediately in his heirs at law, and can only be divested by their own voluntary deed or act, or by the judgment of a court of competent jurisdiction.

4. PROBATE COURT—JURISDICTION.—The probate court has no jurisdiction over land for any purpose whatever by the constitution, or inherently in the nature of its organization. It is only by virtue of the special, conditional power conferred by the legislature, on the happening of the event named in the statute, that the probate court can assume jurisdiction on the land which has vested in the heirs.

5. ADMINISTRATION—ASSETS—COMMISSIONS.—The goods and chattels and personal estate, and choses in action of the decedent, or which may have accrued to his estate after his death from the sale of property, real and personal, or otherwise, shall be assets, and shall stand chargeable with all the debts and expenses, and the expenses of administering the estate; and the lands, tenements, and hereditaments shall also stand chargeable for the debts over and above what the personal estate may be sufficient to pay. Rev. Code, 443, art. 80. The term debt, in the latter clause, does not embrace commissions and compensation to the administrator for his trouble in administering the estate.

6. DEFICIENCY OF ASSETS—LIABILITY OF REAL ESTATE.—A deficiency of assets occurring at any time during the administration is meant by the statute; and although there may have been ample personal assets at the time of the decedent's death, yet if they have been lost without the fault of the administrator or executor, the land may be at once resorted to.

7. DEVASTAVIT—REMEDY OF CREDITOR.—Where there has been mismanagement or *devastavit* by the administrator or executor, the creditor will be referred to his remedy by action on the case, or on the bond, and cannot proceed against the heir for the lands descended, at least until his legal remedy has been exhausted.

Appeal from the chancery court of Carroll county. COF-FEE, J.

Appellant assigned the following errors :

1st. The court erred in sustaining the defendant's demurrer to the complainant's petition.

2d. The court erred in deciding that the chancery court had no jurisdiction of the petition.

3d. The court erred in dismissing the petition.

*J. Z. George,* for appellant.

But two questions arise in this case :

1st. Has the probate court jurisdiction to order a sale of lands of a decedent, for the purpose of paying a debt due to the administrator, arising in the course of the administration, whether from advances made by him, to pay debts, or arising from the costs of administration, and his commissions ?

2d. Has the present chancery court such jurisdiction ?

The statute (Rev. Code, 443, art. 80) provides as follows : " The goods and chattels, personal estate, choses in action, and money of the deceased, or which may have accrued to his estate after his death, from the sale of property, real or personal, or otherwise, whether he died testate or intestate, shall be assets, and shall stand chargeable with all the just debts and funeral expenses of the deceased; and the ex-penses of settling the estate, even the lands and tenements, shall also stand chargeable for the debts, over and above," etc.

In the first part of this section, the legislature undertakes to declare what shall be assets, and I think it very clear that funeral expenses and expenses of administration, are put on the same footing with debts. As to all subjects therein de-clared to be assets, what did the legislature declare assets ? 1st. Goods and chattels; 2d. Choses in action ; 3d. Money of the deceased, that is, money owned by him at the time of his death, or 4th. Money which may have accrued to his estate after his death, from the sale of real or personal prop-erty, or otherwise. That the fourth class refers to money arising from the sale of property, real or personal, made after

his death, is manifest, for if not, it refers to money arising from choses in action, and choses in action was already declared to be assets; and so much of the act as is included in the 4th class, above quoted, would be insensible and useless, and this would violate a well settled rule of the constitution, which declares that the statutes are to be so construed as to give every word and phrase in it, its appropriate signification and meaning.

This construction is also objectionable on the ground that the clause under consideration refers to money or choses in action accruing after the decedent's death, and this makes it manifest that this clause means money or choses in action arising from the sale of personal or real property, made after the intestate's death. And if the money or choses in action arising from sale of realty made after the intestate's death, are assets to pay expenses, I can't see why this land itself, is not liable, since the administrator has no power to sell, and thereby get money or choses in action, except to pay debts. Evans v. Fisher, 40 Miss., 643. But if the probate court has no power to order the sale, the chancery has, being clothed with all the jurisdiction of the chancery court of England, in the administration of estates. Real estate is equitable assets, and when it cannot be reached by legal proceedings, the chancery court will interfere and order a sale to pay the debt.

*James Summerville,* for appellees.

There is but one question presented by the record in this cause. Can an administrator maintain a petition in the probate court to sell the lands owned by the intestate, for the purpose of paying the expenses of the administration ?

By the common law the real estate of a deceased person was not liable for his debts, unless the ancestor had shown the intention to charge his realty by instrument under seal. Our statute has manifested this rule. Rev. Code, 443, articles 80, 88, 89.

The subject matter of legislation was, 1st. The personalty which was charged with debts and expenses of administra-

tion; 2d. The realty made chargeable with the debts due by the deceased.

This legislation being in derogation of the common law, and intrenching upon the immemorial rights of the heir at law, must be strictly construed. The lands descending directly to the heir upon the death of the ancestor, will not be charged beyond the plain meaning of the statute, viz: the debts due by the deceased beyond the sufficiency of the personalty.

"The title of the heir can only be diverted by his own voluntary act, or by the judgment or decree of a competent court by due course of law." Root v. McFerrin, 37 Miss., 18, 48; Evans, v. Fisher, 40 Miss., 688.

There is no power given to the probate court, or its successor, the chancery court, to decree the sale of the lands to pay the commissions allowed to the administrator or any expenses of administration whatever; these are by law charged upon the personalty. Drinkwater v. Drinkwater, 4 Mass., 358; Dean v. Dean, 3 Mass., 261.

SIMRALL, J. :

J. W. Holman presented his petition as administrator of E. W. Bennett, deceased, to the probate court of Carroll county, praying for the sale of land for the payment of debts.

The cause having been continued in the chancery court, was there dismissed for want of jurisdiction.

The only point made and discussed in this court, is whether the law confers authority on the probate court to sell the lands of a decedent, for the purpose of paying the commissions allowed to an administrator, as compensation for his care and trouble.

In a case decided at this term, we held that the chancery court succeeded to the powers and jurisdiction of the probate court, in matters testamentary and of administration; and in exerting the jurisdiction, conferred by the law on the latter court, it stood in the place of the former. We are not aware that the question here presented, has ever received

the separate and deliberate consideration of our predecessors, and we, therefore, approach its investigation with such lights as the analogies of principle, and the adjudications on cognate subjects may afford. The common law of England, brought over by the colonists, as part of their heritage, as British subjects, so far as applicable to the new circumstances and condition, and so far as not changed by statute, is the law of this state. When a statute is passed in modification or derogation of the common law, the courts will construe the statute strictly, that is, they will assume that the legislature, in the terms of the act, expressed all the change in the old law intended to be made, and they will not, by construction and intendment, enlarge its operation.

Bringing before the mind distinctly the common law, and then the statutes as they affect the *status* and disposition of a decedent's property, may aid us in the solution of this question.

At common law, on the death of a person, his real estate of freehold inheritable, descends immediately to the heir. His goods and chattels and credits vest in his executor or administrator—the title taking effect by the appointment, but relating back to the decedent's death. At common law, the personal assets was the fund exclusively appointed for the payment of debts. In case of intestacy there was no mode or remedy of reaching the land; nor in case of testacy, unless there was created by the will, a charge upon the land for that purpose. The heir was not bound for the debts of the ancestor, unless specially nominated in a sealed instrument, and then only to the extent of the real assets descended. Such was the law in England until the act of William and Mary, 3, 4, chap. 14, followed by 47 Geo., III; 11 Geo. IV; 1 William IV, from time to time, encroaching on the old law, until by the last act of the parliament, in 1833, the lands of a decedent were subjected to the payment of simple contract debts generally, subordinate to the priority of specialty creditors.

In Campbell v. Brown, 6 How., 234, in view, both of the

common law, and the statute, the court said, "The lands of the ancestor descends to his heirs at his death. The title becomes vested in them, and can only be divested by the decree of the probate court." Later, in Root v. McFerrin, 37 Miss., 46, "On the death of the ancestor, the title to his real estate vests immediately in his heirs, and can only be divested by their own voluntary deed or act, or by the judgment or decree of a court of competent jurisdiction."

Let us see in what state of case the probate court has authority to divest the title of the heir; the case last quoted, with singular aptness of words, says: "The probate court has no jurisdiction over land for any purpose whatever, by the constitution, or inherently, in the nature of its organization. It is only by virtue of the special conditional power conferred by the legislature on the happening of the event named in the statute, that the probate court can assume jurisdiction over the land which has vested in the heir."

At common law, the functions of the administrator are confined to the personal estate; by our law, his duties are precisely the same, except upon the contingency of a deficiency of the personal estate to pay the debts; therefore, the propriety of the language of the court in Root v. McFerrin: "The administrator, as such, has no interest in, or power over the land belonging to his intestate at his death."

Rev. Code, 443, art. 80, under the title of assets and notice to creditors, is as follows: "The goods and chattels, and personal estate, choses in action of the deceased, or which may have accrued to his estate after his death from the sale of property, real and personal, or otherwise, shall be assets, and shall stand chargeable with all the debts and funeral expenses, and the expenses of administering the estate, and the lands, tenements and hereditaments, and shall also stand chargeable for the debts, over and above what the personal estate may be sufficient to pay, and may be subjected as afterwards prescribed," etc.

It may be remarked on this statute, that according to its phraseology, the charge on the personal assets, and money

which accrued to the estate after the death, from the sale of property, real or personal, is broader than the charge upon the lands, tenements, etc., the latter being chargeable with the debts over and above what the personal estate may be sufficient to pay. What debts? Those due by the intestate at his decease; or such as have accrued also afterwards, as expenses of administration in the form of commissions to the administration? If the charge upon the land were meant to be as comprehensive as those on the personalty, why make a distinction in the description of it? If lands, tenements, etc., were intended to be co-extensive and co-equal with the classification of the assets in the first clause of the article, why not in continuation of the enumeration have added after goods and money on hand, or accrued, etc., also the lands, tenements, etc., shall be chargeable with the just debts, funeral expenses, and expenses of settling the estate?

The manner of subjecting the real estate as assets for creditors is strongly corroborative of this construction. Article 88, pp. 445, 446, directs what is necessary to be done, to-wit: The administrator shall prefer a petition, accompanied with a full and true account of the personal estate, and the debts due from the deceased.

Section 89 lays down the rule to guide the court in its decision: "If the court shall be satisfied that the personal estate is insufficient to pay the debts of the deceased, and shall be of opinion that the land ought to be sold for that purpose," it may license the sale. If expenses of administration, and compensation to the administrator, is not a debt of the deceased, within the meaning of the statute, then a sale to pay them cannot be ordered. The first clause of article 80 charges money arising from the sale of "real property," with debts, funeral expenses, and expenses of administration. When so converted, the lands are treated for all purposes of creditors and expenses, as the personal assets. But, until the contingency has arisen (the deficiency of personal assets) the administrator cannot intermeddle with them. He produces no authority for license to sell, until he proves debts of the deceased, demanding their sale.

In obtaining information of " the debts due from the deceased," the administrator looks to the registration of " claims against the deceased," as provided in Rev. Code, 444, art. 83, together with such other knowledge as he may have. The entire scope of the law in reference to the administrators of decedents' estates, looks to expeditious settlement—speedy payment of debts is enjoined. There may be distribution after the expiration of a year, on taking refunding bonds. The personal property may be sold at once, on *ex parte* application, without notice to the distributee. Every facility is provided by statute to get in the assets, convert so much of personal effects as may be needed into money, for payment of debts. Creditors may enforce payment, and move for new and better administration bond. It is contrary to the spirit and purpose of the law, that the administrator, with a knowledge that there are creditors unpaid, should lie by supinely and neglect to convert the personal estate into money for their benefit, and years after, when the assets have perished or been wasted, to seek to make liable the lands, on the ground of insufficiency of assets.

The views which we have thrown out as to the proper construction of the statute, seem to be sustained by the decisions in Massachusetts, in similar enactments. In Dean v. Dean, 3 Mass., 260, the question was as to the right of the administrator to sell lands to reimburse himself for expenses incurred in the course of administration. The statute of Massachusetts, as stated in the opinion, are first, the act of 1782, directing the descent of intestates' estates : " The real estate shall be chargeable with all the debts of the deceased, over and above what the personal estate shall be sufficient to pay." Subsequent provisions direct the mode of obtaining a judicial license to sell, when the personal estate shall be insufficient." Remarking on these statutes, the court say, " It is manifest that the lands of an intestate are not assets to be administered by the administrator, but when there is a deficiency of personal estate to pay the debts he *owed* at his death." So in Drinkwater v. Drinkwater, admr.,

4 Mass., 356, commenting on the statutes, the court say: " At law, the lands descend to the heir, subject to the payment of debts, if there be a sufficiency of assets. The administrator has no interest in them, but a naked authority to sell them, on license to pay debts, when the personal estate is insufficient. And lands not being liable to pay debts at common law, they are made liable by statute, which does not extend the liability to defraying the charges of administration. The personal estate alone is the fund for the payment of these charges."

It will be observed that there is a marked similarity in the statute of Massachusetts and ours. The former charges the land " with all the debts of the deceased ; " ours, for the " debts," omitting the words " of the deceased." The decisions are to the point that expenses of administration are not debts of the deceased, within the act. When our statute says, " the lands, tenements, and hereditaments of the intestate shall also stand chargeable for the debts," does it mean more or less than the " debts " of the deceased intestate ? See also, Mitchell v. Lunt, 4 Mass., 658.

The reason underlying these judgments is, that the statute is an encroachment on the common law, charging with debts a decedent's property, not heretofore liable, and therefore the courts would not be warranted in putting upon the heir any greater burden than that described by the statute.

The controverted points in the case of Evans v. Fisher, executor, 40 Miss., 643, was whether the deficiency of personal estate must be referred to the condition of things at the date of decedent's death, or the time when the petition to sell the land is filed. And second, if the deficiency has been superinduced, since decedant's death, by causes over which the creditor and legal representative had no control, and without fault, whether the land can be subjected to creditors. The court held that a deficiency occurring any time during the administration, was meant by the statute, and though there may have been ample personal assets at the death of the intestate or testator, yet if they have been

lost without fault of the administrator or executor, the land may at once be resorted to.

If there has been mismanagement or *devastavit* by the administrator or executor, the creditor will be referred to his remedy by action on the case or the bond, and cannot proceed against the heir for the lands descended, until legal remedy has been exhausted. We have been referred by the counsel for appellant, to Cason v. Campbell, MS. opinion, as sustaining the relief sought by the petition. In that case the administrator *de bonis non* sought to sell the land to pay a balance of $516 60 due to one Boggan, late executor. The evidence of indebtedness was the final account of Boggan, executor, which showed that all the debts had been paid, that he had advanced for the estate of his own funds, $174 85. The executor was allowed for commissions $341 75, which added to the above sum made the aggregate of his debt. The decree on the final settlement, charges the personal estate with the debt, and allows execution therefor. The court state the question involved thus : " Has not Boggan lost his lien, because there was ample means for a year, within which to pay this balance." It is said, " he had permitted the personal estate to go to destruction." It was like a *devastavit*, in such circumstances there must be an exhaustion of the remedy on the bond. The court answers the question in the affirmative, and say it was not a proper case to sell the real estate.

It will be noticed, that there was due Boggan, besides his commission, $174 85, and the point was not raised, in the opinion, whether, if the whole claim of Boggan had been for commissions, it would have been such a " debt," as the statute would have authorized a sale of the land. The judgment was placed upon other grounds.

In the case at bar, the intestate died in 1861, in which year the letters of administration were granted (it appears from the answers that the personal estate was distributed in 1862, or a large part of it); that besides this, there were other assets. In its features it is much like the case of Cason v.

Campbell, where it is said the administrator had ample opportunity to reimburse himself for a year, and having parted with the personal assets to the distributees, he came too late to subject the land.

Putting the decision in Cason v. Campbell in the form of a general statement, and it would embrace this idea: Where the administrator has control over personal assets, ample to reimburse himself for advances and commissions, but delivers over these assets to the distributees, he cannot afterwards apply to sell the lands. That proposition applies to the condition of facts set up in the answer.

We fail to find in the statute any countenance to the idea, that the expenses of administering personal assets are chargeable upon the lands descended or devised. Commissions are allowed on the whole estate administered. This would embrace the proceeds of lands sold, for then the lands are converted into personal assets, and are applied to the claims of creditors, as is the personal estate. We are clearly of opinion, that if the administrator had in possession assets enough to pay debts and expenses of administration, and has discharged all the claims of creditors, and distributed the surplus, he cannot go upon the lands to raise money to pay his commissions; and that disposes of this case.

And, we are inclined to the opinion (not necessary, however, to be decided in this case) that the probate court has no authority to license the sale of lands, except to pay the debts of the intestate; and that the expenses of administering the personal estate is not such debt within the terms of the statute.

Decree affirmed.