57 So.2d 83

**C. E. ADAMS & CO., Inc., v. HARRELL.**

**6 Div. 330.**

Supreme Court of Alabama.

Jan. 17, 1952.

Rehearing Denied March 6, 1952.

26

Taylor, Higgins, Windham & Perdue and Wade H. Morton, Birmingham, for appellee.

J. P. Mudd and E. M. Friend, Jr., Birmingham, for appellant.

LAWSON, Justice.

Certiorari was granted on petition of C. E. Adams & Company, Inc., a corporation,

to review a judgment of the circuit court of Jefferson County awarding compensation to the widow and minor children of Samuel J. Harrell, deceased.

The proceedings were instituted in the trial court under the Alabama Workmen's Compensation Law, Chapter 5, Title 26, Code 1940, by Mrs. Lucille A. Harrell, the widow, who sued on her own behalf and that of her minor children. Between the time the proceedings were instituted and date of trial, Mrs. Harrell married one Norris.

Three questions are presented: (1) Was plaintiff's intestate an employee of the defendant company or was he an independent contractor?

(2) Did the defendant company have "actual knowledge" of the injury and accident so as to dispense with written notice as provided by § 294, Title 26, Code 1940?

(3) Did the trial court err in finding that the average weekly earnings of intestate was $40?

In treating these questions we are governed, of course, by the rule so often stated in this class of case that the finding of the trial court will not be disturbed where there is legal evidence which will support the trial court's finding. Sloss-Sheffield Steel & Iron Co. v. Keefe, 217 Ala. 409, 116 So. 424; American Radiator Co. v. Andino, 217 Ala. 424, 116 So. 121; Sloss-Sheffield Steel & Iron Co. v. Watts, 236 Ala. 636, 184 So. 201. We are not concerned with the conflict in the evidence or the weight of the evidence. Our duty is simply to ascertain whether there was any legal evidence to sustain the conclusions of the trial court. If any reasonable view of the evidence supports such conclusions, then the judgment will not be disturbed. Riddle v. Smith, 252 Ala. 369, 41 So.2d 288.

The trial court's findings which bear on these issues are as follows:

"2. On, to-wit, March 14, 1950 Samuel J. Harrell, deceased, was a resident citizen of Jefferson County, Alabama, and on said date was employed as a truck operator for the defendant C. E. Adams & Company, Inc., a corporation, in and about the operation of said defendant's business in Shelby County, Alabama, and the defendant C. E. Adams Company, Inc., a corporation was on said date doing business in Jefferson County, Alabama. The decedent was being paid the sum of 40¢ per cubic yard for chert hauled from a pit approximately two and one-half miles from Childersburg, Alabama to the job site in Childersburg, Alabama. Out of said 40¢ per cubic yard decedent paid all cost of operating the truck used in hauling said chert. Said truck being owned by the decedent.

"3. The deceased was killed in an accident on, to-wit, March 14, 1950, when the truck being operated by him was in collision with another motor vehicle. At the time of said accident decedent was en route, with a load of chert, from the pit to the job site and traveling along the normal route of travel between the chert pit and the job site.

"4. The court finds that at the time of the collision the decedent was acting in the course of his employment and the accident arose out of such employment. As a proximate result and consequence of the collision the decedent sustained injuries from which his death resulted on said March 14, 1950.

"5. The defendant C. E. Adams & Company, Inc. had actual knowledge of the accident and death of the decedent, not later than the day following said accident.

"6. The court finds that by reason of the shortness of the period of employment of decedent by the defendant C. E. Adams & Company, Inc. that results just and fair to the parties will be obtained by arriving at the average weekly earning of the decedent based in part upon the average weekly earning of a person in the same grade of employment, employed in the same class of employment in the same district as the decedent during a period of 52 weeks prior to March 14, 1950. That said average weekly earning was the sum of $40.00 per week.

"7. The court finds that at the time of the accident the defendant C. E. Adams & Company, Inc. and said Samuel Harrell were subject to the Workmen's Compensa-

tion Laws of Alabama; that said Samuel J. Harrell was an employe of said defendant.

\* \* \* \* \* \*

"13. The defendants have interposed the defense of independent contractor. The court finds that the facts do not support said defense for the reason that: (a) The defendant C. E. Adams & Company owned or had the royalty to take and remove the chert which decedent was hauling. (b) The chert was quarried or dug by said defendant with machinery owned by it. (c) The machinery used by said defendant to quarry or dig the chert was operated exclusively by said defendant's employes. (d) The chert was loaded on the decedent's truck under the supervision and control of said defendant's employes. (e) Upon arrival of the decedent at the job site with a load of chert such chert was unloaded or dumped by him at a point designated by an employe or employes of said defendant and such unloading or dumping of chert was done by decedent under the supervision and control of defendant's employes. (f) The decedent's hours of work were regulated by the defendant as he could not haul or dump chert except during the hours of employment of the defendant's employes who loaded chert on his truck and supervised both the loading and unloading of the same at the chert pit and at the job site. (g) The loading and unloading of the chert to and from decedent's truck were subject to such delay as was entailed in waiting 'mill turn' at the pit and at the job site."

Petitioner does not challenge the correctness of the facts as found by the trial judge on the question of whether deceased was an employee or an independent contractor. Petitioner argues, however, that the facts so found do not warrant the conclusion reached by the trial court that deceased was an employee.

Much stress is laid in argument on the fact that deceased, in rendering service to petitioner, used his own truck and paid the cost of its operation. This fact did not change the relationship. North Alabama Motor Express, Inc., v. Whiteside, 27 Ala.App. 223, 169 So. 335.

This court is fully committed to the proposition that it is the reserved right of control rather than its actual exercise which furnishes the true test of whether the relationship between the parties is that of an independent contractor or of employer and employee—master and servant. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608, and cases cited.

This case is not distinguishable in principle from Sloss-Sheffield Steel & Iron Co. v. Crim, 219 Ala. 148, 121 So. 408; Stith Coal Co. v. Alvis, 224 Ala. 603, 141 So. 663; Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276; Tuscaloosa Veneer Co. v. Martin, supra. See McKay v. Crowell & Spencer Lumber Co., La.App., 189 So. 508.

The trial court upon a consideration of all the facts has found that the relationship of employer and employee and not of an independent contractor existed between deceased and C. E. Adams & Co. at the time deceased was killed, and on a review of the evidence as set out in the bill of exceptions, we are clearly of the opinion that there were some inferences to be drawn from the evidence tending to support the finding of the trial court.

The trial court found that the "defendant C. E. Adams & Company, Inc. had actual knowledge of the accident and death of the decedent, not later than the day following said accident."

In its brief, petitioner concedes that "if it obtained 'actual knowledge' of Mr. Harrell's death within a 90 day period subsequent to the accident, there was no obligation on the part of the plaintiff to give written notice of the accident to the defendant, as required by Sections 294 and 295, Title 26, 1940 Code of Alabama." Such has been the rule since the decision of this court in Ex parte Stith Coal Co., 213 Ala. 399, 104 So. 756.

The insistence is made that the evidence does not support the conclusion of the trial court that petitioner had actual knowledge within the prescribed period of time.

There is no evidence going to show that the injury occurred under the eye of the.

employer or that anyone connected with the employer saw Harrell's body after he was killed. See Ex parte Stith Coal Co., supra; Swift & Co. v. Rolling, 252 Ala. 536, 42 So.2d 6.

But in order for there to be knowledge, the accident need not occur under the eye of the employer or his alter ego. American Radiator Co. v. Andino, supra; Great Atlantic & Pacific Tea Co. v. Davis, 226 Ala. 626, 148 So. 309; Sloss-Sheffield Steel & Iron Co. v. Foote, 231 Ala. 275, 164 So. 379; Virginia-Carolina Chemical Co. v. Cherry, 233 Ala. 582, 173 So. 86; Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 20 So.2d 591.

If all the facts are brought to the knowledge of the employer within the prescribed period, written notice is not necessary. Ex parte Stith Coal Co., supra. But verbal notice alone given by the employee is not the same as actual knowledge.. Sloss-Sheffield Steel & Iron Co. v. Keefe, supra; Sloss-Sheffield Steel & Iron Co. v. Foote, 229 Ala. 189, 155 So. 629; Id., 231 Ala. 275, 164 So. 379; Republic Steel Corp. v. Willis, 243 Ala. 127, 9 So.2d 297; American Radiator Co. v. Andino, supra.

We have said that what constitutes "actual knowledge" is scarcely capable of more exact definition than the words import, and that each case where that question is involved must be determined on its own facts. Republic Steel Corp. v. Willis, supra; Nashville Bridge Co. v. Honeycutt, supra.

C. E. Adams, the president of the company, was called as a witness on behalf of the company. On cross-examination of this witness the following occurred:

"Q. Do you now recall you were in Childersburg on the day Joe Harrell was killed? A. No, sir; I was not.

"Q. What day after his death did you learn about his death? A. I heard about it the following morning.

"Q. You heard about it the following morning? A. Yes, sir.

"Q. Did you see the place where the accident occurred? A. I did.

"Q. Was one or both of the trucks still there at the point of the wreck? A. I don't recall whether they were both there or one there.

"Q. There was one there? A. I know there was a truck there, or maybe two.

"Q. Was that place where that accident occurred between the pit and the job site? A. It was on Highway 91.

"Q. You turned off the Florida Short Route to 91, and went a distance, and then off the paved road to the pit, did you not? A. Right.

"Q. So it was at a point between the pit and the job? A. Yes, sir."

It was on this testimony evidently that the trial court concluded that C. E. Adams & Company had actual knowledge of the accident and injury on the following day. But we are not limited to the evidence as it relates to the question of actual knowledge on the day after the accident. If there is legal evidence showing that within ninety days of the accident the employer had actual knowledge of Harrell's death and knowledge that his death resulted from an accident that arose out of and in the course of the employment, then the judgment of the trial court will not be disturbed.

F. R. Daugette, vice-president of the company, testified that the circumstances of the accident first came to his attention a week or ten days later when someone in his office mentioned it. Later one Watkins told him about it. Watkins had come to the office to collect what was due him for the hauling of chert. After talking with Watkins, Daugette instructed the secretary-treasurer of the company to prepare a check payable to the plaintiff, Harrell's widow, in the sum of $50, which amount was due Harrell by the company at the time of his death. The check was prepared and signed by the secretary-treasurer. It was countersigned by Daugette. The check was given to Watkins for delivery to Mrs. Harrell. He delivered it to Mrs. Harrell, who endorsed and cashed it. Upon presentation to the bank the check was paid. As to his transaction with Watkins, Daugette testified: "He came to get his check, and mentioned the fact that Mr. Harrell had

gotten killed; and I voluntarily asked him if he was going back to Childersburg, that probably Mrs. Harrell needed the money, and I would like to send it over then by him, which I did. He took the check."

Watkins' testimony relative to receiving the check was in material respects in accord with that of Daugette. Watkins said that the check was signed by Adams and that Adams "said something about he was sorry about the accident, and something like that; and it was too bad for Mrs. Harrell and the children. I don't remember the exact words." Adams did not sign the check and it is apparent that Watkins thought that Daugette, the vice-president, was Adams, the president of the company. But this mistake in identity is immaterial. Knowledge of either of them would be knowledge of the company. They were both active in the affairs of the company. Adams was the outside man, while Daugette did the office work.

The plaintiff testified that she had a conversation with Adams wherein he said that "he was sorry about the accident and about his death." Adams denied having any conversation with plaintiff but, as before indicated, we are not concerned with the conflicts in the testimony.

On April 11, 1950, less than a month after Harrell's death, counsel for plaintiff wrote C. E. Adams & Company the following letter:

"We have been retained by Mrs. Lucille Harrell, the widow of S. J. Harrell, to recover damages sustained by her by reason of the death of her husband, who was killed on the Florida Short Route on March 14, 1950, in an accident involving the truck operated by Mr. Harrell and a truck being operated by one John T. Harris.

"You are no doubt familiar with the facts relating to this matter. Please contact us or have your insurance carrier contact us in regard to this matter at your earliest convenience."

Under date of April 17, 1950, the law firm of London & Yancey wrote counsel for plaintiff as follows:

"Re. Mrs. Lucille Harrell v. C. E. Adams & Company, Inc.

"Our 25678

"Gentlemen:

"Your letter dated April 11th, 1950, addressed to C. E. Adams & Company, Inc., with reference to a claim for damages for the death of S. J. Harrell, has been referred to us for handling.

"We wish to advise that John T. Harris, the driver of the truck referred to in your letter, was not employed by our client, C. E. Adams & Company, Inc., nor was the vehicle which he was operating owned by them. Furthermore, investigation discloses that Mr. Harrell met his death as a result of his own negligence.

"We must respectfully deny liability in this matter."

It seems clear to us that the evidence set out above shows beyond question that the employer had actual knowledge of Harrell's death within ninety days after the accident. How Adams heard of the accident and death is not shown. But it does appear that he first heard of it from someone other than plaintiff. The vice-president, Daugette, first heard of it through the company's employees. In any event, the company was certain enough of Harrell's death to warrant it paying his widow money which he had earned. The expressions of sympathy made by Daugette and Adams tend to show that they knew of the death. The letter written by London & Yancey to counsel for plaintiff shows on its face that C. E. Adams & Company had referred to that firm for handling the claim asserted by plaintiff in her counsel's letter of April 11, 1950. In the letter of April 17, 1950, C. E. Adams & Company is referred to as the client of the firm of London & Yancey, which firm, the letter shows, investigated the *death* of Mr. Harrell. There was no effort on the part of the employer, C. E. Adams & Company, to show that it had not referred the matter to London & Yancey or that that firm was not authorized to make an investigation on its behalf.

We are also of the opinion that a reasonable view of the evidence supports a

finding that the employer had actual knowledge within the prescribed period that Harrell's death resulted from an accident which arose out of and in the course of his employment.

Without question, the accident occurred while Harrell was hauling chert from the company's pit to the place where the company was engaged in road construction work. It occurred on the road usually travelled by the truck drivers so engaged and in fact, on the only road which it was feasible for them to use. Adams knew where his company's pit was located and where the work was being done. He visited the place where the accident occurred. He knew that Harrell was engaged in hauling chert. These circumstances are sufficient to show that Adams, the company's president, had actual knowledge that the accident arose out of and in the course of employment.

We have said that actual knowledge can exist without a compliance with all the requirements of the written notice. It is not necessary that the employer know at first hand that the injury arose out of and in the course of employment. Sloss-Sheffield Steel & Iron Co. v. Foote, 231 Ala. 275, 164 So. 379.

We do not seem to have a case where the facts are in all respects the same as those presented here. But there is much similarity between the facts of this case and those set out in the opinions of this court in the cases of Ex parte E. I. DuPont de Nemours & Co., 213 Ala. 604, 105 So. 592, and Ex parte Little Cahaba Coal Co., 213 Ala. 596, 105 So. 648, and we think the conclusions reached in those cases support our holding here that the employer had actual knowledge within the ninety-day period that Harrell died as a result of injuries received in an accident which arose out of and in the course of his employment.

In arriving at its conclusion that the average weekly earnings of deceased was $40, the trial court correctly applied the italicized provisions of subsec. (G), § 279, Title 26, Code 1940, which reads as follows: "* * * Where by reason of the shortness of the time during which the employee has been in the employment of his employer, or the casual nature or terms of the employment, it is impracticable to compute the average weekly earnings as above defined, regard shall be had to the average weekly amount which during the fifty-two weeks prior to the injury was being earned by a person in the same grade, employed at the same work by the same employer, *and if there is no such person so employed, by a person in the same grade employed in the same class of employment in the same district.* * * *" (Emphasis supplied.)

The deceased had been working for the petitioner for about three days at the time he received his fatal injury. The petitioner, during the fifty-two weeks prior to the date of the injury, had not had in its employ a person in the same grade, employed at the same work. There was ample evidence to sustain the finding of the trial court as to the average weekly earnings of deceased from the testimony going to show the average weekly earnings of persons in the same grade employed at the same class of employment in and around the city of Birmingham.

The argument is made that Childersburg, the place where the accident occurred, is not in the same district as the city of Birmingham, within the meaning of subsec. (G), § 279, Title 26, supra, and, therefore, the evidence introduced on the trial was insufficient to sustain the finding of the trial court. We judicially know that Birmingham and Childersburg are only thirty-five miles apart. Under such circumstances, we are unwilling to hold that the trial court was not justified in basing its finding as to the average weekly earnings of the deceased on the evidence as it related to the earnings of persons similarly employed in and around the city of Birmingham. In a case such as here presented, much must be left to the sound judgment and judicial discretion of the trial court. H. C. Price Co. v. Lee, 249 Ala. 230, 30 So.2d 579.

We are of the opinion that the record is free from any error here argued and that the judgment is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.