ESTATE OF BARDWELL, DECEASED *v.* PERRY TIMBER Co., et al.

No. 39467        February 7, 1955        77 So. 2d 708

*E. A. Turnage, R. G. Turnage,* Monticello, for appellant.

*Young & Daniel,* Jackson, for appellee.

856

KYLE, J.

This case is before us on appeal by Mrs. Nora Mae Bardwell, surviving widow, and the three minor children of Willie M. Bardwell, deceased, from a judgment of the Circuit Court of Lincoln County affirming an order of the Workmen's Compensation Commission, denying the appellants' claims for workmen's compensation benefits under the Mississippi Workmen's Compensation Act, Chapter 354, Laws of 1948, and amendments thereto.

The record shows that the deceased, Willie M. Bardwell, was fatally injured in an accident which occurred about three o'clock p. m. on August 29, 1952, at the Laird sawmill, about eight miles west of Brookhaven, on U. S. Highway No. 84, at a time when the deceased was unloading a truck load of logs belonging to the Perry Timber Company. Bardwell was the driver of the truck and was preparing to unload the logs, and as he unloosed his binder three of the logs fell off on him. His body was crushed by the weight of the logs, and he died about one hour later.

The appellants' claims for death benefits under the Workmen's Compensation Act were denied by the attor-

ney-referee and the compensation commission on the ground that the proof showed that Bardwell was employed by H. L. Dunaway, an independent contractor, and was not an employee of the Perry Timber Company, and that Dunaway at the time of Bardwell's death had only five employees including the deceased and did not have compensation insurance.

The facts in the case, as shown by the testimony of the witnesses, were substantially as follows:

The Perry Timber Company was the owner of a large sawmill in the City of Brookhaven. R. T. Perry was the manager and president. On July 28, 1951, the company purchased from Mrs. Marjorie Brown all timber, 12 inches or more in diameter, on a 210-acre tract of land in Section 25, Township 7 North, Range 8 East, in Lincoln County, known as the "Marjorie Brown tract." By the terms of the timber deed the grantee was allowed sixteen months within which to cut and remove the timber. Perry made arrangements with H. L. Dunaway, a logger of considerable experience, who had been working for Perry much of the time since 1943 or 1944, to cut and haul the timber. Dunaway owned a truck and tractor, also mules and a pair of tongs, axes and other tools and equipment necessary for the cutting and hauling of timber. Dunaway testified that he had bought timber at times in small tracts for himself, paying stumpage therefor, and had produced it himself. He employed three or four helpers and paid them himself, even when he was working for Perry. Dunaway testified that his agreement with Perry for the cutting and hauling of the timber on the Marjorie Brown tract was that he was to produce the poles and piling and deliver them at the mill for a sum equal to 45 per cent of their value and that he was to cut and haul the logs for $20 per thousand feet, log scale.

At the time Perry purchased the Marjorie Brown tract of timber Dunaway was engaged in cutting timber on another tract owned by Perry Timber Company near Ha-

zlehurst; and Perry testified that at the time he was negotiating with the owner for the purchase of the Marjorie Brown tract of timber he and Dunaway had agreed that Dunaway should cut the timber if Perry succeeded in buying it. Perry also confirmed Dunaway's statement that it was agreed that Dunaway should receive 45 per cent of the market value of the poles and piling produced, and $20 per thousand feet for the logs as compensation for his services in cutting and hauling the timber on the Marjorie Brown tract. Dunaway went to work on the Marjorie Brown tract about two weeks after the timber deed had been delivered, and was still engaged in cutting and hauling timber from the Marjorie Brown tract at the time Bardwell was killed.

Bardwell had been working for Dunaway about three months at the time of his injury. Bardwell's regular job was running the loader, a logger's dream, which had been loaned to Dunaway by the Perry Timber Company. In addition to Bardwell, Dunaway had working for him three colored helpers. Dunaway usually drove the truck himself; but on the day Bardwell was killed Dunaway had a case of sickness in his family and could not drive the truck. For that reason Bardwell drove the truck with the load of logs to the Laird mill. Dunaway stated that Perry had nothing to do with Dunaway's hiring of Bardwell or any of his other employees. Dunaway and his helpers were the only timber cutters and loggers on the Marjorie Brown tract.

Dunaway stated that while nothing was said about Perry's right to fire him or about his right to quit when he started to work on the Marjorie Brown tract he went there with the intention of cutting the tract of timber, and it would have been wrong for Mr. Perry to have said to him that he would not be allowed to finish the job. But Dunaway stated that if Mr. Perry had told him to quit he would have quit, and if he had got ready to quit himself he would have just quit. Perry stated that while they had no written agreement about the matter, and

while Dunaway could have quit any time he wanted to quit, the company did not have the right to stop Dunaway as long as he fulfilled his obligation. There was nothing said in the agreement about the company having the right to stop him. "He had a perfect right to produce until that timber contract expired."

As to Perry's right to control Dunaway's operations, Dunaway stated that Mr. Wilson, Perry's representative, was in the woods pretty often, but did not undertake to boss him. Mr. Wilson told him where to deliver the logs, which were not to be delivered at the Perry Timber Company yard. The hardwood timber, and, perhaps, the large pine logs were sold to other sawmill operators; and Dunaway said that he understood that it was a part of the agreement that he should take the logs to whatever point Mr. Wilson told him to. Dunaway stated that he was in the woods working and did not have time to make arrangements for selling the logs. Some of the logs were delivered to the Laird mill eight miles west of Brookhaven; other logs were delivered at mills at Monticello and Oma. Perry stated that the pine logs were sold to Allen Smith because Smith's mill was conveniently located, and that the hardwood was sold wherever a buyer could be found.

The main point argued by the appellants' attorneys as ground for reversal of the judgment of the lower court is that the attorney-referee and the full commission erred in their finding that Dunaway was an independent contractor at the time of Bardwell's death, and that Bardwell was an employee of Dunaway and was not an employee of Perry Timber Company, and that the learned circuit judge erred in affirming that finding.

But we think that it cannot be said that there was error in the finding of the attorney-referee and the commission on that point, or in the judgment of the lower court approving that finding.

The facts in this case are very similar to the facts in the case of Carr v. Crabtree, 212 Miss. 656, 55 So. 2d 408;

and we think that the decision rendered in that case is controlling here.

According to the testimony of both Dunaway and Perry, the contract which Dunaway had with the Perry Timber Company, and which he was engaged in performing at the time of the accident in which Bardwell was killed, was a contract definite in its terms for the cutting and hauling of the timber 12 inches in diameter and above on the 210-acre tract of land known as the Marjorie Brown tract. For his services Dunaway was to receive a fixed price of $20 per thousand feet log scale for all logs and an amount equal to 45 per cent of the market value of the poles and piling produced. Dunaway employed his own helpers and supervised their activities. He furnished his own truck, tractor, teams, tongs, saws and axes necessary for the proper performance of the contract. He purchased his own supplies of gasoline, oil and repair parts as needed. He paid his own workmen. He regulated their time for going to work and for quitting. He financed for the most part his own timber cutting and logging operations. The physical management of the instrumentalities used, and the physical conduct of the workmen employed by him in the execution of the contract remained under his control. These facts, in our opinion, show that the relationship of Dunaway to the Perry Timber Company was that of an independent contractor, and not an employee of the Perry Timber Company. Kisner v. Jackson, 159 Miss. 424, 132 So. 90; Hutchinson-Moore Lumber Company v. Pittman, 154 Miss. 1, 122 So. 191; Cook et al., 177 Miss. 644, 171 So. 686; Crosby Lumber & Manufacturing Company v. Durham, 181 Miss. 559, 179 So. 285; Carr v. Crabtree, supra.

But it is said that Dunaway testified that Perry could have stopped him and his helpers at any time, and Perry testified that Dunaway could have quit at any time, and that proof of these facts show that Dunaway only had a job and was not an independent contractor. But Dunaway's testimony indicates very clearly that when he

agreed to move on the Marjorie Brown tract he intended to cut the timber on the entire tract, and he understood that he had a right to do so. Perry stated that the company did not have the right to stop Dunaway as long as he fulfilled his obligation. The testimony of both of these witnesses tends to show that there was an agreement definite in its terms for the cutting and hauling of all of the timber on the Marjorie Brown tract; and it is not necessary for us to determine whether Dunaway could have been held liable for damages if he had abandoned the work before it was completed. Perry's testimony indicates clearly that in his opinion the company would have been liable for damages, if Dunaway had been fired without reasonable cause.

The case is clearly distinguishable from Sones v. Southern Lumber Co., 215 Miss. 148, 60 So. 2d 582, in that Dunaway furnished his own equipment for cutting and hauling the logs, while in the Sones case the lumber company furnished the equipment. It is true that Perry loaned to Dunaway the logger's dream for a few weeks; but we think that the fact that Dunaway was permitted to use the logger's dream for a short period of time has little bearing on the question as to his status as an independent contractor. Carr v. Crabtree, supra.

It is also argued that Perry admitted that the checks issued to Dunaway for timber produced on the Marjorie Brown tract were included by the company in the computation of the premiums on its compensation insurance, which was paid in Chicago, and that Dunaway testified that Perry told him his men were covered by insurance; and that these facts clearly indicate that Perry regarded Dunaway and his helpers as employees of the Perry Timber Company for the purpose at least of determining Perry's liability under the Workmen's Compensation Act. Perry and his bookkeeper, however, both testified that Dunaway and his helpers were not carried on the books of the company as employees, and Bardwell was not on the company's payroll. It was also

shown that no deduction was made from Dunaway's checks for the workmen's compensation insurance. If it be admitted that the proof was sufficient to show that the checks issued to Dunaway in payment of the amounts due him under his contract were included in the amounts reported to the insurance company as amounts paid for labor, such proof in our opinion was not sufficient, in view of all of the other facts in this case, to change the relationship of Dunaway to the Perry Timber Company from that of an independent contractor to that of an employee; and this is true especially in view of the fact that Dunaway's employees were not carried on the payroll of the Perry Timber Company, and so far as this record shows were not reported to the insurance company as employees of the timber company. Nelson et al. v. Slay et al., 216 Miss. 640, 63 So. 2d 46.

We find no prejudicial error in the record and the judgment of the circuit court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.