Lawson *v.* Traxler Gravel Co., et al.

No. 40215          November 5, 1956          90 So. 2d 204

*Tighe & Tighe,* Jackson, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellees.

ARRINGTON, J.

The appellant, Willie T. Lawson, appeals from a judgment of the Circuit Court of the First Judicial District of Hinds County which affirmed the decision of the Workmen's Compensation Commission and the attorney-referee in denying his claim for compensation.

The record discloses that the appellant started to work for the Traxler Gravel Company in 1948, and continued in this employment until May 10, 1952, at which time he started working for one E. O. McGrew. The Traxler Gravel Company, according to the testimony of Mr. Ruel Traxler, one of the owners, operated several gravel pits in the State and was dealing in washed gravel. The appellant's work consisted of driving a truck hauling washed gravel from the gravel bin to a stockpile located approximately 300 yards from the bin; that he would back the truck under the bin and then pull a lever to load the truck with gravel; that he would have to get upon the truck and throw out dirt, rocks and trash from the load; that when he arrived at the stock pile, the gravel was dumped by hydraulic means; that the gravel was wet and water leaked from the truck on the roadway from the bin to the stock pile. The appellant contends that during this operation he would get wet; that it was dusty and that he would cough as a result of the dust; that also he was called upon to do heavy lifting from time to time when part of the plant would break down. Mr. Traxler testified that there was no dust or mud on the roads where appellant worked, that it was like concrete due to the water dripping from the load of wet gravel. He admitted that some of the men working at the pit would get damp at times and that others did not. He also testified that the appellant did not do ten minutes worth of hard labor during the entire time he worked for him;

that in an emergency, he would be called upon to help with repairs, but that seldom occurred; that the appellant worked for him until May 10, 1952, when he went to work for Mr. McGrew. The appellant testified that driving the truck was not hard work and also that he went to work for Mr. McGrew after May 10, 1952.

The appellant's claim is that he contracted tuberculosis in the year 1952, and that his work for Traxler Gravel Company aggravated or combined with his tubercular condition to produce his disability.

The evidence shows that while the appellant, a Negro, was working for McGrew, his brother Albert was found to be suffering from tuberculosis in the early part of June 1952, and was confined to the Hinds County Tubercular Hospital at Raymond, Mississippi; that the Board of Health of Hinds County caused x-rays to be made of the appellant and the other members of his family, which consisted of six in number, all living in a three-room house; that as a result of this x-ray examination, the appellant was diagnosed as having tuberculosis on June 26, 1952, which diagnosis was later confirmed by a sputum test in July 1952; that the appellant was requested to go to the hospital but he continued working for McGrew until the latter part of September and entered the hospital on September 26, 1952, where he remained a year for treatment.

After a full hearing by the attorney-referee, the referee found that up until May 10, 1952, the appellant was employed by Traxler Gravel Company, and after that date he was employed by McGrew, an independent gravel hauler, and that the evidence was insufficient to prove that there was any connection whatever between his employment and his tubercular condition either by causation or aggravation, which finding was later affirmed by the full commission and the circuit court.

The appellant assigns and argues that the attorney-referee, the commission and the circuit court erred

in finding that the appellant was employed by McGrew, an independent contractor, and not an employee of the appellee, Traxler Gravel Company. We have carefully examined this assignment and find it to be without merit, as the evidence conclusively shows that the appellant was working for McGrew.

The appellant next contends that it was error to deny him compensation benefits for his disability. Three medical experts were introduced and testified in this case. Dr. Lee R. Reid, a chest expert as to tuberculosis, and a consultant in that field for the Hinds County Health Department, treated the appellant. Dr. A. L. Gray of the State Board of Health testified on behalf of the appellant, and Dr. Henry Boswell, Superintendent of the State Sanatorium, testified on behalf of the appellee. All of these doctors testified that tuberculosis was an infectious disease and that in this case they were unable to tell when, where or how the appellant contracted the disease. Doctors Reid and Boswell testified that the appellant had a well-advanced case of tuberculosis involving both lungs with cavitation. Dr. Reid gave a history of appellant's case, and stated that it was diagnosed on June 26, 1952 by an x-ray examination and later was confirmed by other tests. He also testified that appellant had primary tuberculosis and that he was then suffering from the reinfectious type. Dr. Reid further testified that there were two general types of tuberinculosis—primary and reinfectious—and that the reinfectious type followed the primary. He was asked the following questions:

"Q. Doctor, would you say it was probable that Willie Lawson had this primay infection at a short time or a much greater period of time prior to when he was diagnosed as having reinfectious type tuberculosis?

"A. There would be no way to know.

"Q. Is it true that the reinfectious type usually follows the primary at a great length of time rather than the

reinfectious following the primary at a shorter length of time?

"A. It more often follows it at a long length of time.

"Q. What would be the average length of time it would take a disease to develop to that stage, far advanced with cavities?

"A. That would be very difficult to answer that question. I don't believe we can answer that as to the average time.

"Q. Is it more probable it would be a great length of time or a very short length of time?

"A. We would consider that degree of tuberculosis ordinarily as having existed for—I would hesitate to put a time length on it. As a matter of fact, you just can't say how long it existed."

Upon cross-examination, he testified:

"Q. And I believe you stated you couldn't tell when he contracted the tuberculosis?

"A. No.

"Q. Or you don't know how he contracted it?

"A. No.

"Q. Or for how long he had it?

"A. No. Prior to the x-ray taken on 6-26-52, I didn't have any way of knowing how long he had it before that."

With reference to the appellant's tuberculosis, Dr. Gray testified as follows:

"Q. If a patient was diagnosed as having far advanced tuberculosis, how long would you say it would take the tuberculosis to get to that stage? . . . . .

"A. Well, I would have to answer that question this way: That that sort of thing is so extremely variable from one person to another and from one situation to another, I couldn't attempt to answer in a definite time period. I don't know.

"Q. Is it more probable that that condition probably existed for a greater period of time, say three or four months, than it would happen in the space of three or four weeks? . . . . .

"A. I would like to answer that in this way: That is, most cases of tuberculosis would not develop into the far advanced stage within three or four months."

Dr. Gray testified that he had not examined the appellant and he would not know where, when or how he contracted the tuberculosis. Dr. Boswell, on behalf of the appellee, testified that upon examination of the x-ray pictures that the appellant had an acute adult type of the disease. Dr. Boswell also testified with reference to the spread of the disease in the negro race, as follows:

"A. Well, the Negro race doesn't seem to have any immunity to the disease like a white person, white people that's been exposed to it over the centuries, and practically every one of them develop the acute, extensive, adult type; and it spreads very much more rapidly in a Negro than it does in a white person.

"Q. Can you give us any definite time period there to show how rapidly it does spread in these Negro cases, Doctor?

"A. Not in a Negro. There is no way in the world to tell how long they've had it. It appears in them like a pneumonia frequently, and diagnosed pneumonia by their doctors; and it spreads all over the lungs almost overnight, whereas in a white person it's usually a slow process of development."

He also testified that you very rarely ever see the primary type of tuberculosis in a Negro and that the appellant probably had not had the primary; that he got an infection from some case. With reference to the advance of the disease, upon cross-examination by appellant's attorney, the doctor testified as follows:

"Q. Would you say it would be likely that a disease that had advanced to that far stage had done so within a space of two months or a relatively short period of time?

"A. Well, it could be. It very likely would in a Negro. That's the usual thing we look for. It spreads just overnight. In white people it's a different thing. I could

estimate how long any of you had had it with pretty good accuracy, but in a Negro it comes on and is diagnosed as pneumonia and later called tuberculous pneumonia; and they don't all do that, but there's so many of them do it you can never tell.

"Q. Yes, sir. Doctor, I realize from your testimony that that is possible, but with a case of tuberculosis where it has progressed to that stage with cavitation of the lung it wouldn't be likely that it had gone to that stage in two months. In other words, it would be more probable that it had been with the patient longer than a two-months' period, wouldn't you say?

"A. I don't think so. I've seen it happen in white people. I saw a white girl that got a cavity that big in one week, and in a Negro there's just no way to get me to estimate how long any of them's had it.

"Q. What your testimony boils down to is, you can't tell with any certainty when—

"A. No. sir.

"Q. —when he contracted the disease?

"A. I don't even attempt to.

"Q. Then it's possible in this case that the claimant might have had the primary stage of tuberculosis and then been infected with the reinfection type of adult tuberculosis and then his disease grew to the stages that were shown on this first x-ray film, is that correct?

"A. It's entirely possible, yes.

"Q. He might have had that tuberculosis in the primary stage for years before the first x-ray was made, isn't that correct?

"A. It's possible that an individual can have, and that's particularly true in the white people. As I stated, I seldom ever see a Negro that doesn't have the adult type."

The testimony given by these three medical experts presented a question of fact for the determination of the Workmen's Compensation Commission. Thus the sole question presented on this appeal is whether

there was substantial evidence to support the findings of the Commission. ▆▆ The burden of proof was on the appellant to prove facts prerequisite to his recovery. Ingalls, etc. v. Howell, 221 Miss. 824, 74 So. 2d 863. ▆▆ . We are of the opinion that there was substantial evidence to support the finding of the Commission that appellant did not have tuberculosis prior to May 10, 1952, and that we would no be warranted under the decisions of this Court in setting it aside. Barry v. Sanders Co., 211 Miss. 656, 52 So. 2d 493; Deemer Lumber Company v. Hamilton, 211 Miss. 673, 52 So. 2d 634; Thornton v. Magnolia Textiles, Inc., 55 So. 2d 172; Fischer v. Gloster Lumber, etc., Co. 57 So. 2d 871; T. H. Mastin & Co. v. Mangum, 215 Miss. 454, 61 So. 2d 298; Mississippi Products, Inc., v. Gordy, 80 So. 2d 793; and Southern Engineering & Electrical Co. v. Chester, 83 So. 2d 811, and authorities there cited.

▆▆ In the case of Smith, et al v. St. Catherine Gravel Co., et al, 220 Miss. 462, 71 So. 2d 221, this Court said: "We must respect the findings of the attorney-referee, the commission and the trial judge unless such findings are against the weight of the evidence or are manifestly wrong."

In view of our conclusion, we do not reach the question of aggravation of a pre-existing disease. The judgment of the court below should be and is affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie,* JJ., Concur.