WADE *v.* TRAXLER GRAVEL COMPANY, et al.

No. 40600          January 27, 1958          100 So. 2d 103

*W. M. Broome,* Crystal Springs, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellees.

KYLE, J.

This case is before us on appeal by William (Bill) Wade from a judgment of the Circuit Court of Copiah County affirming an order of the Mississippi Workmen's Compensation Commission approving the findings of the attorney-referee and dismissing the claim of the appellant against Traxler Gravel Company and its insurance carrier for compensation under the Mississippi Workmen's Compensation Act.

The record shows that Wade was injured on April 21, 1955, while hauling gravel from the Lingle Pit in Copiah County. The injury occurred while Wade was attempting to make an adjustment or repair on his truck and the dump body dropped unexpectedly, striking Wade and inflicting a crushing injury to his chest. He was sent to the Baptist Hospital at Jackson immediately for medical treatment, and was totally disabled until June 9, 1955, at which time the doctor permitted him to return

to light duty work. On October 11, 1955, the doctor discharged him as being able to return to full duty, with an estimated ten or fifteen per cent permanent disability. The doctor stated that his opinion as to the extent of Wade's disability was based on his finding that the right side of Wade's chest was smaller than the left, and the results of an X-ray examination made on November 25, 1955. He stated that the right muscle of the diaphragm "is elevated to the seventh rib at the base of the lung," and "a crescent shaped density is noted extending outside from the lower region"; that "both lungs have a stringy appearance." Wade testified that since the accident he had suffered some shortness of breath on exertion which made it necessary for him to take frequent rests.

The attorney-referee found that the Traxler Gravel Company was engaged in the business of mining and selling gravel, and that it owned or leased several gravel pits in the Crystal Springs area, and delivered gravel to its customers both by rail and by truck; that all of the equipment used in excavating, washing, stock-piling and loading gravel at the pit was owned by the Traxler Gravel Company; that approximately sixty per cent of the gravel sold by the company was shipped by rail, and the remaining forty per cent was delivered by trucks owned by others than the company. The attorney-referee found that the claimant Wade owned and was operating one of these trucks at the time of his injury on April 21, 1955; that the injury was accidental, and that Wade was temporarily and totally disabled from that date until June 9, 1955; and that he was temporarily and partially disabled from June 9, 1955, to October 11, 1955. The attorney-referee found that Wade had attained maximum medical recovery, and that he had a ten per cent permanent partial disability to the body as a whole as a result of the accidental injury. The attorney-referee found, however, that Wade was an independent contractor and not an

employee of the Traxler Gravel Company at the time of the accident; and the attorney-referee entered an order dismissing Wade's claim for compensation.

Upon review the full commission affirmed the order of the attorney-referee; and the circuit court, upon appeal, affirmed the order of the commission.

The only question presented for our decision on this appeal is whether or not the attorney-referee and the commission erred in their finding that the appellant was an independent contractor and not an employee of the Traxler Gravel Company, and whether the circuit court erred in affirming the order of the commission dismissing the appellant's claim.

Wade testified that he had been hauling gravel for Traxler about a year prior to April 21, 1955, and that he was hauling gravel from the Lingle Pit at the time that he was injured. Wade stated that under the company's plan of operation the haulers could enter the pit to have their trucks loaded only between the hours of 2:00 o'clock in the morning and 5:00 o'clock in the afternoon. Loading operations in the pit were shut down from 5:00 P.M. until 2:00 A.M. He stated that he was required to get a ticket at the office before he went into the pit, and if he did not get a ticket he could not haul. The truck that he owned would haul six yards of gravel. He had no regular time to report for work, and if he wanted to take a day off he could do so. Wade stated that the company had seven or eight men who worked in the pit. The company also had a tractor, a drag line and other equipment in or about the pit, for stripping the dirt off of the gravel deposits and loading the gravel. The gravel haulers had to line up, and after the gravel was loaded on the trucks the drivers hauled the gravel to the point of destination and delivered it to the purchasers. When it was delivered the purchaser signed a ticket or receipt, which the driver brought back to the office. The company's representative told the driver where to carry the gravel. The company had a map and

would show the driver which way to go. The number of yards of gravel that the truck could carry was marked on the body of the truck. Wade stated that he had no written contract of hire. He could quit at any time he got ready. The company could turn him off at any time. He did not agree to haul any certain amount of gravel. The company owned the machinery and equipment at the pit; Wade and the finance company owned the truck that he was driving; and Wade paid for his own gasoline and oil, and his own repair bills. There were about 75 trucks which were being operated at the time Wade was injured. They all operated under the same standard procedure. Wade owned one truck at the time he was injured. He was paid by the yard for hauling the gravel every two weeks. He always obeyed the instructions issued by Traxler.

Russell Slay testified that he was working for the Traxler Gravel Company on April 21, 1955, and quit in June 1955. He worked in the office. He wrote orders and tickets for delivery, told the truck drivers where to carry the gravel and what type of gravel to load. He showed the truck drivers a map and showed them the best route to take. Sometimes he had to carry an order over to the pit, if it was a rush order; and he would give it to Traxler's foreman, or the man on the drag line; and the foreman would then tell the truck driver what type of gravel to load and where to carry it. Traxler usually tried to keep certain crews that would haul like Traxler wanted them to do. If they had a man who would go off and haul somewhere else, "they just would not fool with him—they would not keep him." They would not keep a man who did not show up regularly for work. On cross-examination Slay stated that there were some truckers who owned as many as four trucks and hired their own drivers. Most of the truckers bought their gasoline and oil from Traxler and Traxler held it out of their earnings at the end of the two-weeks period.

George Traxler testified that he was an official of
the Traxler Gravel Company, which was a Mississippi
Corporation; that he had been engaged in the gravel
business twenty years; and that he had personally super-
vised the operation of the Lingle Pit since his brother's
death on January 25, 1955. The business of the company
was mining gravel and sending it to users. The company
shipped by rail and by truck, about sixty per cent by
rail, and forty per cent by truck in a year's run. The
trucks that were used in delivering gravel to the con-
sumers were owned by private individuals. There were
about eight men who worked in the pit. The truckers were
not carried on the regular company payroll. They were
carried on the truckers' payroll, and were paid every
two weeks by check. No deductions were made from their
payroll. The truckers such as Wade were paid by the
yard. Some of the truckers owned more than one truck.
Traxler was asked whether the company had any control
over the hiring and firing of these hired truck operators.
His answer was, "Yes, I hire them, and when we get
through with them we lay them off and tell them when
we need them we will call them." The truckers were hired
according to the needs of the business. The company had
no control over whom the truck owners hired to op-
erate its trucks. The company-owned trucks were not
used to haul gravel on the highway. They were used for
stock-piling gravel and moving dirt, and the company
owned one lowboy that hauled heavy equipment. Traxler
was asked whether the company directed over what route
the trucks should make their deliveries. His answer
was, "The only thing we do like that is, say, tell the guy
where to load, tell him what machine to get under, be-
cause this machine could be loading one thing and that
one another. We have 13 machines up there. * * * We
tell him where the destination is, it is up to him. We can
only tell him, he can take whatever streets he wants to
take to get there. We have maps and we will assist them
if they want it—we will show them where it goes."

Traxler stated that the trucker had no regular hours, he could come and go as he pleased. As to the method of doing business, Traxler stated that the company had ticket books which contained three copies of each ticket. The driver's name was written on the ticket. The man who issued the tickets would tell the trucker where the gravel was to be delivered. The trucker would then carry the gravel to the point of destination, and the man at that end of the line would initial the ticket. The trucker would bring the ticket back, and the company would give him a receipt for it and a record of the hauling would then be entered on the payroll in the office.

On cross-examination Traxler stated that the truck drivers had no kind of written contract. There was no understanding with them about how much gravel they were supposed to haul before they quit. They were not obligated to haul any specific amount of gravel. Traxler stated that he could let them go when he got ready. They could quit when they got ready. None of them obligated themselves to do a specific piece of work before they quit. Traxler stated that he had a right to let a truck driver go at any time, and he did not think there would be any legal liability on his part for letting him go. He stated that when the fellows began to try to strike, he picked out the ones he wanted to let go and let them go. He did not tolerate any insubordination.

Several other witnesses testified during the hearing before the attorney-referee, but it is not necessary that we give a summary of their testimony.

We think there was error in the finding of the attorney-referee and the commission that Wade was an independent contractor and not an employee of the Traxler Gravel Company. The facts in the case, in our opinion, certainly do not bring the appellant within the accepted definition of an independent contractor.

In the case of Texas Co. v. Mills (1934), 171 Miss. 231, 156 So. 866, this Court said:

■ ■ "The words 'independent contractor' are used in contrast with the word 'servant' and not with the word 'agent;' for both an independent contractor and a servant are agents of their principal. Rest. Agency, sec. 2, comment b; 1 Mecham on Agency (2 Ed.), sec. 40.

■ ■ " '(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

■ ■ " '(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.' Rest, Agency, sec. 2, pars. 2 and 3, p. 11."

These definitions are supported by numerous decisions of this Court. Crosby Lumber and Mfg. Co. v. Durham, 181 Miss. 559, 179 So. 285; Meridian Taxicab Co., Inc., v. Ward, 184 Miss. 499, 186 So. 636; Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880; Carr v. Crabtree, 212 Miss. 656, 55 So. 2d 408.

In discussing the difference between an independent contractor relationship and the relationship of master and servant, the textwriter in 35 Am. Jur., p. 448, Master and Servant, par. 5, says:

"The determination of whether a relationship is strictly that of master and servant or is an independent contractor relationship, or whether a person is an independent contractor or merely an employee or a servant, depends upon the power of control which the employer is entitled to exercise over the person in question. The relation is that of independent contractor where it appears that a person employed to do work is not, in the execution and performance of such work, subject to the control of the employer, but is free to execute the work without being subject to the orders of the employer with respect to the details thereof. If, however, one engages

another to perform certain work, retaining control of the conduct of the person thus engaged with respect to the work to be done or the order, method, and plan of the work, the relation is that of master and servant, and not of employer and independent contractor.''

■■ ■ The matters of fact to be taken into consideration in determining whether one acting for another is a servant or an independent contractor are set forth in Section 220, Rest. Agency, and in numerous decisions of this Court. See especially, Kisner v. Jackson, 159 Miss. 424, 132 So. 90; and Texas Co. v. Mills, 171 Miss. 231, 156 So. 866; Carr v. Crabtree, 212 Miss. 656, 55 So. 2d 408; Sones v. Southern Lumber Company, et al., 215 Miss. 148, 60 So. 2d 582; Mississippi Employment Security Commission v. Plumbing Wholesale Co., 219 Miss. 724, 69 So. 2d 814; Employers Insurance Company of Alabama v. Dean, 227 Miss. 501, 86 So. 2d 307.

Among these matters of fact are:

''(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

''(b) whether or not the one employed is engaged in a distinct occupation or business;

''(c) * * *;

''(d) the skill required in the particular occupation;

''(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

''(f) the length of time for which the person is employed;

''(g) the method of payment, whether by the time or by the job;

''(h) whether or not the work is a part of the regular business of the employer; * * *.'' Rest. Agency, Sec. 220, p. 483.

In the case that we have here there is no substantial dispute as to the facts relating to Wade's employment; and it seems clear to us from the testimony of Wade and

Traxler that Wade was a mere employee of Traxler at the time of his injury. Traxler had and exercised the right of control over Wade's hauling operations which is normally present in the employer-employee relationship. Wade was hired to haul gravel at so much per cubic yard and according to the length of the haul. He did not contract to do a set piece of work; his employment was not to last for any specified period of time. Traxler controlled the loading of Wade's truck at the pit; and through the ownership and operation of the loading machinery Traxler controlled in a measure the hours of the day during which Wade could haul gravel. Traxler determined the kind and quantity of gravel that Wade should haul, the distance which the truck was to travel, and the amount of pay that Wade was to receive for delivering the gravel to the purchaser. Wade and Traxler both testified that Wade could quit work at any time that he pleased, and that Traxler might terminate his services at any time that he saw fit to do so. Wade had no distinct occupation or business. He was merely a gravel hauler, and no particular skill was required to haul gravel. Wade was paid every two weeks for his services. These facts, in our opinion, show an employer-employee relationship and not the relationship of an independent contractor.

Larson says, "The power to fire is the power to control. The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract, under which the contractor should have the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract." Larson's Workmen's Compensation Law, Vol. 1, p. 654, par. 44.35. As stated by the Court in Industrial Commission v. Meddock (1947), 65 Ariz. 324, 180 P. 2d 580. "It is the right to control rather than the fact that the employer does control that determines the status of the parties, and this right to control is, in turn, tested by those standards applicable

to the facts at hand. * * * To a poor man needing work, the power to dismiss immediately is equivalent to the power to control.''

■■ The fact that Wade was paid a unit price per yard for the gravel he hauled, instead of an hourly wage, is not proof in itself that Wade was an independent contractor. The majority of modern decisions in cases involving continuity of service give little weight to the fact that a trucker is compensated at so much per thousand feet of logs or lumber, per ton of stone, or per yard of gravel. Larson's Workmen's Compensation Law, par. 44.33(b). See also Travelers Ins. Co. v. Curtis (C.C.A.5, 1955), 223 F. 2d 827; Sones v. Southern Lbr. Co. (1952), 215 Miss. 148, 60 So. 2d 582; Maryland Casualty Co. v. Real (Tex. Civ. App. 1952), 244 S. W. 2d 865; C. E. Adams & Co. v. Harrell (1952), 257 Ala. 25, 57 So. 2d 83; American General Ins. Co. v. Hightower (Tex. Civ. App. 1954), 264 S. W. 2d 481. Neither is the fact that Wade owned and furnished his own truck for hauling the gravel a determinative factor in the case. As Larson says, there is a growing tendency to classify owner-drivers as employees when they perform continuous service which is an integral part of the employer's business. Larson's Workmen's Compensation Law, Vol. 1, p. 653, par. 44.34.

In Texas Employers' Ins. Ass'n. v. Owen (Tex. Com. of App., 1927), 298 S. W. 542, the Court held that in an action to set aside the Industrial Accident Board's decision denying claimants compensation, the question whether a trucker, who furnished his own truck and hauled gravel from the pit, was an employee rather than an independent contractor, was properly submitted to jury where there was evidence tending to show that the deceased was an employee and the contract was oral. The Court in its opinion in that case said: ''The facts of this case certainly do not bring the deceased within the accepted definition of an 'independent contractor.' This definition is admirably stated in Shannon v. Western In-

demnity Co. (Tex. Com. App.), 257 S. W. 522: 'A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.'

"Practically the only indicium of employer and independent contractor is that the deceased owned and furnished the truck for hauling the gravel that he was engaged to deliver. But this circumstance is no more controlling than if he had insisted upon furnishing his own shovel for loading the gravel when he was otherwise employed as a common laborer by the day. There is lacking here the indispensable feature of an 'undertaking to do a specific piece of work.' There was not contemplated any completed job. It was a mere service at the will of the parties."

The rule stated in the Owen case was expressly approved and applied by the Supreme Court of Texas in Southern Underwriters v. Samanie (1941), 137 Tex. 531, 155 S. W. 2d 359. The Owens case was also cited and approved by the Texas Court in the three very recent cases. Maryland Casualty Co. v. Real, supra; American General Insurance Co. v. Hightower, supra; and American General Insurance Co. v. Sims (Tex. Civ. App. 1955), 278 S. W. 2d 586.

In the case of Standish v. Larsen-Merryweather (Neb. 1932), 245 N. W. 606, the Court, under facts similar to the facts in the case that we have here, held that a truck owner, engaged by a contractor who was furnishing gravel for a county highway, was not an "independent contractor," but an "employee", within the Workmen's Compensation Act. The Court in its opinion in that case

said: "In performing this work the company used some of its own trucks. It procured the services of several persons owning trucks to do the greater part of the hauling. Plaintiff was one of those persons. By agreement with the company, plaintiff was required to furnish and service his truck, and was to receive 70 cents for each load of three tons of gravel hauled. The agreement was indefinite as to length of time that plaintiff was to haul. No specified number of loads, or quantity of gravel, was agreed upon. Plaintiff was at liberty to quit hauling at any time; the company could have discontinued his services at any time, and neither would have been liable in damages to the other by plaintiff's cessation of hauling. Plaintiff was required to get each load of gravel at a particular place and to haul and dump it at a definite place. He was required to haul three tons at a load, and to weigh part of the loads, to make sure that his loads came up to the required weight. He was furnished by the company with tickets, consisting of a stub and three coupons, the stub and each coupon bearing the same serial number. One coupon was delivered to the pit owner at the time each load was taken from the pit; one was given to the county's representative when the load was dumped; one was retained by the truck driver, while the stub went to the company. The company paid for the weighing and settled with the truckers at the end of each week for the number of loads hauled."

In Grace Construction Co. v. Fowler (Ind. App. Ct. 1926), 153 N. E. 819, the decedent was injured while using his wife's truck in hauling material for a construction company, which paid him by the load and could discharge him at any time. The Court held that he was not a "contractor" within the Workmen's Compensation Act, but an "employee" of the company. The Court in its opinion in that case said: "The evidence given on the hearing shows, without contradiction, that at the time Fowler was killed he was hauling material to be used by the appellant in its work of improving Cornell Avenue, in the

City of Ft. Wayne, from the yards of appellant, using a small truck which belonged to his wife, the appellee herein; that he was paid by the appellant for the hauling which he did by the load, the price paid for such hauling depending upon the distance the said materials were hauled. This falls far short of making the deceased a 'contractor' within the meaning of the law, and when we consider the testimony of one of the officers of appellant company that, under Fowler's employment, they had the right to discharge him at any time, we conclude that appellant's contention in this behalf is not well taken.''

■■ In Adams & Co. v. Harrell (Ala. 1952), 57 So. 2d 83, in which the Court had under consideration an award of compensation made under the Alabama law, the Court held that the fact that a person uses his own truck and pays the cost of its operation in rendering service to his employer does not change the master-servant relationship to an independent contractor relationship; that it is the reserved right of control rather than its actual exercise which furnishes the true test of whether the relationship between the parties is that of independent contractor or of employer and employee; and that the evidence in that case was sufficient to show that the truck driver using his own truck and paying the cost of operation to haul chert from the defendant's pit to the defendant's job site at the rate of 40 cents per cubic yard was an employee and not an independent contractor. In the case of St. Paul-Mercury Indemnity Co. v. Alexander (1951), 84 Ga. App. 207, 65 S. E. 2d 694, the Court held that the evidence authorized a finding that the claimant was an employee of the principal contractor, though hired to drive a truck by the owner of a truck who was under agreement with the principal contractor to furnish trucks and drivers for a highway construction job.

In the case of Van Watermeullen v. Industrial Commission, 343 Ill. 73, 174 N. E. 846 (1931), the Court held that if an employer employing another to haul gravel

directs where and how the unloading is to be done and retains the right to discharge, the relationship of employer and employee is established. In its opinion in that case the Court said: "It appears that the employer controlled the loading of the truck, the destination of the load, the dumping of the load, the kind and quantity of material hauled, the distance traveled by the truck, the amount of pay received for the load and the right to discharge the employee, and, through the ownership and operation of the machinery which loaded the truck and the machinery for the disposition of the material hauled, the employer controlled the hours of the trucker's employment. The employee was thus subject to his employer's control as to terms, kinds, results, and duration of employment sufficient to establish the relationship of employer and employee."

In Washburn v. Bunce, 287 New York Sup., 1008 (1936), the Court held that the deceased who had agreed to haul sand and gravel as required for certain construction work at a stipulated rate per ton was an "employee" and not an "independent contractor," permitting recovery of compensation for his death, where the deceased could have abandoned the work at will and the employer was free to employ others to haul gravel. See also Washburn v. Bunce (1936), 272 N. Y. 730, 4 N. E. 2d 730; Anderson v. Coca Cola Bottling Co. (1933), 190 Minn. 125, 251 N. W. 3, 4; Carr v. Krekeler (1932), 94 Ind. App. 508, 181 N. E. 526, 528; Root v. Shadbolt & Middleton (1923), 195 Iowa 1225, 193 N. W. 634; Rouse v. Town of Bird Island (1926), 169 Minn. 367, 211 N. W. 327; and Phillips v. Brinkley, 194 Va. 62, 72 S. E. 2d 339, (1952).

In Texas Company v. Mills, 171 Miss. 231, 156 So. 866, this Court held that a bulk station agent was not an independent contractor but an employee of the company, notwithstanding the fact that he furnished his own truck in making deliveries of petroleum products, and, in so hold-

ing, attached much importance to the fact that the contract of employment was for an indefinite period of time and that the business in which the agent was engaged was not distinct from that of the company but was one of the methods pursued by it in carrying on its own business.

In the case of Shumpert Truck Lines v. Horne, 227 Miss. 648, 86 So. 2d 499, the Court held that where a truck lines company engaged a person to handle its business at a certain place in regard to delivery and assembly of incoming and outgoing freight on a percentage basis, using two trucks bearing the name of the truck line company thereon, one of the trucks being owned by the company and the other by the individual, neither the individual nor the person employed by him was an independent contractor, so as to preclude the truck lines company from being liable for compensation for injuries sustained by the individual's employee. The Court in its opinion in that case quoted with approval the following statement from Larson, that ''The modern tendency is to find employment when the work being done is an integral part of the regular business of the employer, and when the worker, relative to the employer, does not furnish an independent business or professional service.'' See Larson's Workmen's Compensation Law, Vol. I, par. 45.00.

According to the testimony of George Traxler, the company shipped about 40 per cent of its gravel by truck. The trucks that were used in delivering gravel to the purchasers were owned by private individuals. The truckers such as Wade were paid by the yard, according to the length of the haul. In selling gravel to purchasers the company charged them pit prices when they hauled it themselves. When the truckers hauled it, the purchasers were charged delivery prices. The company had only eight or ten men who worked in the pit. The company-owned trucks were not used in hauling gravel on the

highway. The truckers such as Wade hauled the 40 per cent of Traxler's total output which was sold to the purchasers at a delivered price and which was to be delivered by truck. With these facts in mind, it cannot be doubted that the work which Wade and the other truckers performed constituted an integral part of the regular business of the company; and we think that it cannot be said that Wade and the other truckers, relative to Traxler, were engaged in an independent business or were rendering a professional service.

The appellees' attorneys cite several cases in support of their contention that Wade's relationship to Traxler was that of an independent contractor, and not that of an employee, including Carr v. Crabtree, et al., 212 Miss. 656, 55 So. 2d 408; Estate of Bardwell v. Perry Timber Co., 222 Miss. 854, 77 So. 2d 708; Simmons v. Cathey, Williford and Jones Co., 220 Miss. 389, 70 So. 2d 847; and Lawson v. Traxler Lumber Co. (Miss. 1956), 90 So. 2d 204.

But none of those cases involved a factual situation such as we have here. In Carr v. Crabtree, supra, the record showed that Carr Brothers were independent contractors and had a definite contract with Crabtree for the cutting and hauling of all the timber 12 inches in diameter and above, except hickory, on the tract of land known as the "Thompson Place", and that C. T. Carr was not an employee of Crabtree at the time he was killed. In Bardwell v. Perry Timber Co., supra, the record showed that Bardwell was killed while unloading a truck load of logs for Dunaway; and according to the testimony of both Dunaway and Perry, the contract which Dunaway had with Perry, and which he was engaged in performing at the time of the accident in which Bardwell was killed, was a contract definite in its terms for the cutting and hauling of the timber 12 inches in diameter and above on the 210-acre tract of land known as the "Marjorie Brown tract." In Simmons v. Cathey, Williford and

Jones Co., supra, the Court found that the evidence was sufficient to support the finding of the attorney-referee and the commission, that Simmons was not an employee of Cathey, but an employee of Wilson, who was an independent contractor; and the Court affirmed the order of the commission denying Simmons' claim. In Lawson v. Traxler Gravel Co., supra, the Court found that the evidence was sufficient to support the finding of the commission that Lawson was driving a truck for McGrew, by whom he was employed, at the time he contracted tuberculosis, and that he did not have tuberculosis during the time that he was employed by Traxler; and the Court affirmed the order of the commission disallowing Lawson's claim against Traxler. It can be readily seen that none of those cases are controlling here.

The appellees' attorneys also cite several cases from other states in support of their contention that Wade was an independent contractor. We have examined each of those cases. Some of them support the appellees' contention. Others, because of differences in factual details, have little or no bearing upon the question presented for our decision in this case. The decisions rendered in some of those cases cannot be reconciled with more recent decisions of the same courts.

■■ We think that the evidence in this case shows conclusively that Wade was an employee of Traxler Gravel Company at the time of his injury, and that there is no substantial evidence in the record to support the finding of the attorney-referee and the commission that Wade was an independent contractor. The judgment of the circuit court affirming the order of the commission is therefore reversed, and judgment will be entered here in favor of the appellant, and the cause will be remanded with instructions to the commission to award compensation and medical benefits to the appellant in conformity with the provisions of the statute.

Reversed and judgment rendered, and the cause remanded.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.