SHUMPERT TRUCK LINES, et al. *v.* HORNE

No. 40097          April 9, 1956          86 So. 2d 499

*Claude F. Clayton,* Tupelo, for appellants.

650

*Adams, Long & Adams,* Tupelo, for appellee.

HALL, J.

T. R. Shumpert, doing business under the name of Shumpert Truck Lines, is engaged in the business of operating motor freight lines. His main office is in Amory, Mississippi, but he operates between that city and Memphis, Tennessee, and has depots in Starkville, West Point, Okolona and Tupelo, Mississippi. He owns the depot in Tupelo and it is identified by a large sign painted thereon,—"Shumpert Truck Lines". The depot at Tupelo and all the business in that particular area is in charge of Orgill Harmon. Two trucks are used in connection with the delivery and assembly of incoming and outgoing freight. Both trucks have Shumpert Truck Lines painted thereon. Harmon owns the small truck and Shumpert owns the large truck. All the business is

handled by Harmon and as compensation for his services Harmon receives a percentage of all collections for freight both incoming and outgoing.  He makes these collections, deducts his commissions, and remits the difference to Shumpert each week.  Harmon selects and pays all the helpers, and among these was the claimant James O'Neal Horne who received a salary of $50 per week and devoted his entire time to the business of appellant in and around Tupelo.  Horne had authority to deliver freight and collect for it, signing the receipts in the name of Shumpert Truck Lines by himself.  He also had authority to pick up outgoing freight and sign receipts for the same in the same manner.  All these receipts and bills of lading were on blanks furnished by Shumpert.

On March 24, 1954, Horne received a serious personal injury while picking up freight and loading it into one of the 59 trailers belonging to Shumpert.  He filed a claim for benefits under the Workmen's Compensation Law which was controverted on the ground that both Horne and Harmon were independent contractors and that Shumpert was not liable for the injury.  The attorney-referee conducted a hearing at which considerable testimony was taken and he found in favor of the claimant.  On appeal his action was affirmed by the full commission, and on appeal from its decision it was also affirmed by the circuit court, from which action Shumpert and his compensation carrier appeal here.

The arrangement between Shumpert and Harmon was all under an oral agreement which had no definite time to run and could be terminated at the will of either.  Even a telephone was maintained in the office in the name of Shumpert Truck Lines.  We think it clear that Harmon and his employees were under the absolute control of Shumpert even though he was not daily present and giving orders.  Almost identically in point is the case of Gulf Coast Motor Express Co., Inc. v. Diggs,

174 Miss. 650, 165 So. 292, from which we quote as follows: "The Motor Express Company was a Louisiana corporation engaged in transporting and delivering, as a common carrier for hire, freight by motortrucks along certain highways, one of which was United States highway 90 from New Orleans to Mobile. The freight was accumulated by the shippers at a depot in the City of New Orleans and there loaded on trucks for various destinations. Couvillon owned a truck and trailer; he was under contract with the Motor Express Company and served the territory between New Orleans and Mobile, and was so engaged when the collision occurred, resulting in appellee's injury. The Motor Express Company issued waybills covering the freight in its own name, and directed Couvillon to deliver it to the consignees; the latter was charged by the company with the amount due on all C.O.D. packages, for which he in turn accounted to the company. He was authorized to accept freight for the Motor Express Company anywhere along the route, deliver it to the consignees, and collect regular freight charges thereon, fixed by the company. Couvillon's compensation was a certain per cent of all freight charges received. The Motor Express Company had freight agents at Biloxi and Pascagoula, in this state, whose duty it was to receive and distribute freight on its account. In many respects the Motor Express Company had substantial control over the means and methods used by Couvillon in carrying freight for it. He was therefore a servant and not an independent contractor. Texas Co. v. Mills, 171 Miss. 231, 156 So. 866; Gulf Refining Co. v. Nations, 167 Miss. 315, 145 So. 327; McDonald v. Hall-Neely Lumber Co., 165 Miss. 143, 147 So. 315. An independent contractor is one rendering services in the course of his occupation representing the will of his employer as to the results alone, and not as to the means of accomplishing those results."

Also in point is the case of Southern Express Co. v. Brown, 67 Miss. 260, 7 So. 318, wherein this Court quoted with approval from the case of Kimball v. Cushman, 103 Mass. 194, as follows: "The fact that there is an intermediate party in whose general employment the person whose acts are in question is engaged, does not prevent the principal from being held liable for the negligent conduct of his subagent or under-servant, unless the relation of such intermediate party to the subject-matter of the business in which the under-servant is engaged, be such as to give him exclusive control of the manner and means of its accomplishment, and exclusive direction of the persons employed therefor."

██ █ In Larson's Workmen's Compensation Law, Section 45.00, it is said: "The modern tendency is to find employment when the work being done is an integral part of the regular business of the employer, and when the worker, relative to the employer, does not furnish an independent business or professional service."

██ █ In this case it is true that Shumpert did not directly employ Horne himself, but Horne was not engaged in any independent business or professional service but devoted his entire time to the business of Shumpert, delivering and picking up freight and collecting therefor, and his wages were paid out of the freight receipts of Shumpert Truck Lines. He was not an independent contractor nor was his immediate superior Harmon. To all intents and purposes, Horne was the employee of Shumpert, and Shumpert could have stopped his services as well as those of Harmon at any time.

The judgment of the lower court is affirmed.

Affirmed.

*Roberds, P.J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.