EMPLOYERS LIABILITY INSURANCE CO. OF WISCONSIN
*v.* HALTOM

No. 40931          January 5, 1959          108 So. 2d 29

*Dabney & Dabney,* Vicksburg, for appellant.

*McGehee & McGehee,* Meadville; *Phillips & Carr,* Brookhaven, for appellee.

HALL, J.

The appellant filed this suit against the appellees for the recovery of $2,201.55 premiums alleged to be due on a workmen's compensation policy issued by it to the appellees. By an amended declaration the amount demanded was increased to $2,410.73. The appellees answered and filed a counter-claim wherein they demanded judgment against the appellant in the amount of $1,011.81, which they claim was overpaid to the appellant.

The policy in question covered the appellees for workmen's compensation payments for the period from October 1, 1952, to October 1, 1953. At the time of issuance the sum of $500 was advanced on the premium and the balance, if any, was to be calculated from time to time on written monthly reports made by the appellees to the appellant based upon the payroll of the appellees in accordance with a premium schedule attached to the policy which fixed the rates to be paid on various types of employees. The insurance company reserved the right to audit the books of the appellees at any time in order to determine whether or not the reports made were correct.

Before October 1, 1953, the appellees decided to carry their compensation insurance with some other company and notified the appellant that they did not desire its policy after October 1, 1953.

The appellees owned and operated a dry kiln and planing mill together with the necessary lumber yard and shed at Roxie, Mississippi. They obtained their supply of rough lumber from various sources but in a great many instances they purchased standing timber and then contracted with various persons to cut this timber and saw it into rough lumber and deliver it to the planing mill. When the insurance company sent an auditor to check the books of appellees they found a number of accounts for logging and sawmill operation of the insured's timber. One of these was T. J. Miller and others were H. V. Whittington, J. K. Clements, John L. Vaughn, Hiram Ballard, W. R. Strickland and Phillip Fortenberry. The appellees' books showed various payments to these parties and the appellant, well knowing that the various items which they had found were only for the contract price of cutting the timber, sawing the lumber and delivering it to the appellees' planing mill, arbitrarily took a percent of the total amount and rated it as labor and charged the appellees for insurance on such labor at the scheduled rate.

Under the arrangements which Haltom had with these various parties, a portion of them were in writing and a portion of them were oral agreements, but in every instance the man who did the cutting of the timber and sawing of the lumber owned his own sawmill, mules and trucks and was to receive so much per thousand feet. These amounts varied slightly according to the distance the lumber had to be hauled to the planing mill, but the general average was $30 per thousand. Haltom did not in any manner exercise any supervision or control over the work; he did not furnish any of the equipment, did not fix any working hours, exercised no voice as to who

should be hired, did not keep the payrolls of these men and did not pay any social security on them, and did not pay for any repairs or upkeep on any of the equipment of these several men, but each man attended to all of this. In fact Haltom did not have any loggers of his own in the various areas where they worked. The only thing shown by the record that Haltom had to do with any of these contracts was to send one of his men out to show what timber should be cut, and, as one of the men expressed it, "it was up to us then". Some of these men carried insurance on their employees and some did not. Taking the figures of the insurance company's branch manager, if Haltom was not due to pay premiums on these various contracts, then the appellant was indebted to Haltom on his counter-claim for the sum of $921.50.

This case was tried by agreement, after many continuances at the instance of the insurance company, before the circuit judge without the aid of a jury and he rendered judgment in favor of Haltom for the sum of $921.50 and denied the relief sought by the original and amended declarations, from which action this appeal is prosecuted.

The appellant points out that while Haltom was operating merely a dry kiln and planing mill, he at one time during the life of the policy did actually own a sawmill which was situated not at Roxie but at the town of Knoxville, but as to this sawmill in Knoxville there appears in the record a written lease contract whereby Haltom leased this particular sawmill to one of the men above mentioned, but Haltom bought the output of that mill, the same as he did the others.

██ ■ We are satisfied that at no time was Haltom liable for the payment of compensation to any of the men employed by these several independent contractors and that the appellant likewise was not liable for the same. This was settled by this Court in the case of Carr v. Crabtree, 212 Miss. 656, 55 So. 2d 408. We deem it necessary to quote only from the syllabus on this point:

"Where two brothers, regularly engaged in business as logging contractors, made a contract with a sawmill operator, definite in its terms, for the cutting and hauling of all timber of specified dimensions on a particularly designated tract of land and for their services they were to receive a fixed price per thousand feet log scale for all timber cut and delivered at the operator's mill, and the brothers furnished their own trucks, teams, saws, axes and other equipment necessary for the proper performance of the contract; purchased their own supplies of gas, oil and repair parts as needed; employed and paid their workmen and assistants; regulated their own time for the hours of the work; financed their own timber cutting and logging operations and controlled the physical management of the instrumentalities and the physical conduct of the workmen employed by them in the execution of their contract, they were independent contractors and not employees within the coverage of the workmen's compensation statute."

Subsequently the same point was decided in the case of Estate of Bardwell v. Perry Timber Co., 222 Miss. 854, 77 So. 2d 708, and we quote from the syllabus in that case as follows:

"In proceedings by widow of fatally injured employee of logger to recover compensation from timber company for which logger was performing work, wherein it appeared that logger had entered into production payment contract with timber company, that logger employed own helpers and supervised their activities, and paid his own workmen, and retained control of physical conduct of workmen employed by him in execution of contract, under facts of case, logger was an independent contractor, and logger's employees were not employees of timber company, but employees of independent contractor; and, consequently, death of employee during logging operation was not compensable by timber company's workmen's compensation carrier."

██ The appellant argues that the cutting, hauling, and sawing of the timber in question is an integral part of the business of appellees. It is true that for the operation of the dry kiln and planing mill Haltom needed a supply of rough lumber, but he acquired that which is involved in this case purely by independent contracts and the fact that he had to have rough lumber does not make the independent contractors and their employees the employees of Haltom. It is necessary for a spinning mill to have cotton in the course of its business but the farmer who grows the cotton and sells it to the spinning mill is certainly not an employee of the mill.

The appellant next argues that the appellees are contractors, but, be that as it may, this does not make the employees of the independent contractors mentioned above employees of the appellees.

Appellant next argues that the Workmen's Compensation Act must be liberally construed. With that statement we agree, but we do not think that it should be construed so liberally as to make the employees of the independent contractors in this case also employees of Haltom.

Appellant next complains that the lower court erred in admitting certain evidence for the appellees. We have carefully read the entire record and have examined the testimony which the appellant mentions but we do not think that the evidence in question was seriously objectionable or that the same influenced the Court in its decision of this case. In fact under the whole record and the undisputed testimony we do not see how the lower court could have reached any other conclusion.

██ Appellant finally argues that the independent contractors above mentioned were actually servants of the appellees, but we think that under the undisputed proof in the case and the authorities which we have above mentioned, these independent contractors were not servants and that there could not have been any liability

of Haltom or the insurance company for any accident which might have happened on their respective operations.

For the reasons given the judgment appealed from must be affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.