275 So.2d 386 (1973)
Lenard COOKS, Deceased, Dependents of, Claimants-Appellants,
v.
NEELY LUMBER COMPANY and Underwriters Insurance Company, Defendants-Appellees.
No. 47013.
Supreme Court of Mississippi.
March 19, 1973.
Rehearing Denied April 16, 1973.
Pyles, Tucker & Cupit, Jackson, for claimants-appellants.
Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for defendants-appellees.
PATTERSON, Justice:
This is an appeal from the Circuit Court of Forrest County. The court there affirmed *387 the decision of the Workmen's Compensation Commission which found Lenard Cooks not to be an employee of the Neely Lumber Company at the time of his death and thereby denied compensation benefits to his dependents.
The appellee is a Mississippi corporation, owned and operated by E.A. Neely (hereinafter Neely). It is engaged in the business of manufacturing and selling finished lumber. Necessary to this process is the purchase of green logs and converting them into rough lumber at a mill. The rough lumber is thereafter dried and planed into finished lumber and is then sold to various wholesale and retail outlets.
At the time of Cooks' death Curtis Temple was employed by Neely as its general manager or sales manager. His duties included supervision of the various activities relating to the sale of the finished lumber produced by Neely for which he was paid a commission.
In 1967 Temple, while employed by Neely, entered into a contract with Neely whereby he agreed to purchase, and Neely agreed to sell, the "shavings" from Neely's planer mill in Gulfport. Prior to this agreement these "shavings" were not considered a merchantable product of the mill and were burned as waste.
The record reveals that Temple paid Neely $5 per load for the "shavings" and transported them to Louisville, Mississippi, where they were purchased by Georgia-Pacific Corporation. In conjunction with his contract with Neely, Temple installed a private telephone in his office at the lumber company, built a house to catch the "shavings," purchased two trucks and three trailers and hired two full-time employees as truck drivers, one of whom was Lenard Cooks.
On June 28, 1968, Cooks was killed in an accident while driving one of the trucks purchased by Temple. The testimony indicates that at one time prior to the accident Cooks was employed by Neely, but its records indicate this employment to have terminated on the pay period of May 22, 1968. Temple testified with regard thereto, and without contradiction, that at the time of the accident Cooks was no longer in the employ of Neely, but had been in his employ for approximately two weeks. He also testified that during this employment all reports that were required by the state or federal authorities of any corporation or company were kept by him.
E.A. Neely, the president of the lumber company, testified that he exercised no control over Temple's "shavings" operation and that he did not know Cooks, the decedent, though it did appear from the records that at one time he was an employee of his corporation.
In determining there was no employer/employee relationship between Neely and Cooks at the time of the latter's death, neither the attorney referee nor the Workmen's Compensation Commission noted the basis for their conclusion. The appellants contend the commission's finding was erroneous, as was the affirmance by the circuit court, for the reason that Temple was not shown by the facts or law to have been an independent contractor. They argue that Temple was therefore an employee of Neely and since this was so, that Cooks also was an employee of the lumber company. They insist that if the normal tests are used in determining the employer/employee relationship, it becomes manifest that Cooks was an employee of Neely. We disagree.
These tests as expressed by this Court are, (1) the control test and (2) the relative nature of the work test. We commented upon them in Brown v. L.A. Penn & Son, 227 So.2d 470 (Miss. 1969); Boyd v. Crosby Lumber & Manufacturing Company, 250 Miss. 433, 166 So.2d 106 (1964); Shumpert Truck Lines v. Horne, 227 Miss. 648, 86 So.2d 499 (1956); Carroll v. E.G. Laughlin & Sons, 220 Miss. 535, 71 So.2d 461 (1954); and perhaps other cases. In *388 Boyd we stated with regard to the first test the following:
... In general, it is said that the right to control, not actual control of, the details of the work is the primary test of whether a person is an independent contractor or an employee... . It is the ultimate right of control, not the overt exercise of that right, which is decisive. Probably the four principal factors under the control test, are "(1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire." ... (250 Miss. at 440, 166 So.2d at 108).
and to the latter test:
... (2) the relative nature of the work test. The latter contains these ingredients: "the character of the claimant's work or business  how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on  and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job." ... (250 Miss. at 444, 166 So.2d at 110).
The application of these tests must be made as hereinafter indicated:
At last, and in any given case, it gets back to the original question of whether the particular contractor is in fact independent in relation to the service which he is engaged to perform. The various tests enumerated in the decisions are simply methods to be used as an aid in determining whether there is true independence in right and in fact. (Dunn, Miss. Workmen's Compensation, 2d Ed., § 131, p. 169 (1967).
In comparing the present facts with the above standards we are unable, by liberal construction or otherwise, to determine that Temple's relation to Neely in the "shavings" operation was that of an employee. From a careful review of the record we are unable to discern any evidence that Neely controlled Temple in his operation or that he retained the right of control. In fact, his testimony, as is Temple's, is that Neely had no such right. Temple paid for the "shavings," a former waste product, by his checks drawn on his individual account. He was paid by Georgia-Pacific for the "shavings" without reference to Neely. Temple also paid Cooks for his employment as a truck driver and maintained the required records therefor. The entire "shavings" operation was not one of long existence, but was rather an initial contract spanning an 18-month term. There is no evidence that Neely had any control over the operation unless it can be said the right to maintain free access to the lumber yard without interference by Temple's trucks in their operation constituted a reserved right of control. This proposition is so peripheral to the reserved right of control test mentioned in the authorities that we cannot accede to it.
In comparing the present situation to the relative nature of the work test we conclude that the sale of a by-product, formerly waste, was not an integral part of the company's business necessary to its manufacturing process. Instead it was the residue of the finishing lumber process seeking status as a saleable product. It was a new facet of the business, honored by contract, and was totally disconnected in its operation from the normal course of Neely's business. We conclude neither of these tests is efficacious to transform Temple's relationship with Neely to that of an employee only. To do so would be contrary to the facts as well as a repudiation of Carroll v. E.G. Laughlin & Sons, 220 Miss. 535, 71 So.2d 461 (1954), wherein we acknowledged the rule that an employee *389 may be an independent contractor as to certain work and a mere servant as to other work for the same employer. Moreover, and by analogy, we comprehend no valid reason why the logic of Carroll would not permit an employee, Temple, to purchase from his employer, Neely, a product for resale, thus establishing a vendor/vendee relationship. In Dunn, Mississippi Workmen's Compensation, 2d Ed., section 142 (1967), this connection is discussed:
The vendor-vendee relationship is not within the coverage of the Act, since the Act applies only to accidental injury sustained by an employee and there must exist a contract of hire.
In the determination of whether the relationship of vendor and vendee actually exists, the contractual relationships must be carefully scrutinized for an objective determination of the factual agreement between and the legal status of the parties, but where the arrangement is in good faith and is not a mere subterfuge or pretense, it will be recognized for what it is and excluded from coverage under the act.
And see Nelson v. Slay, 216 Miss. 640, 63 So.2d 46 (1953), wherein it is stated:
... Although evasions of coverage under the act should not be permitted, courts must balance the terms of this legislation against the rights of persons to create a legitimate contractual relationship of vendor-vendee. (216 Miss. at 651, 63 So.2d at 49)
The right of a citizen to contract is vitally important to the business community and is protected by our laws. We are of the opinion that it was never the intent of the legislature by enacting the workmen's compensation laws to impair the lawful right to contract and when it is legitimately done, as seems the case here, these contracts have invariably been upheld. In extreme cases such as First National Bank of Oxford v. Mississippi Unemployment Compensation Commission, 199 Miss. 97, 23 So.2d 534 (1945), an alleged status of independent contractor was stricken in an unemployment compensation case when it became apparent that the contract was a mere pretense to avoid the act. This same reasoning would apply to acts under the compensation laws. See Dunn, Miss. Workmen's Compensation, 2d Ed., §§ 132 and 133 (1967).
We find no evidence indicating this contract to be a subterfuge or pretense to avoid the act and accordingly we affirm the decision of the circuit court which upheld the finding of the commission.
Affirmed.
GILLESPIE, C.J., and SMITH, ROBERTSON and SUGG, JJ., concur.